IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LILLIE WILLIAMS-STEWART** | * |
| | * |
| v. | *   Civil  No.  JKS 13-2518 |
| | * |
| **SHOPPERS FOOD WAREHOUSE CORP.** | * |
| | * |

## MEMORANDUM OPINION

Presently pending is Defendant Shoppers Food Warehouse Corp.'s motion for summary judgment.  ECF No. 16.  The issues have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons set forth below, Defendant's motion will be denied.

1. **Factual Background.**[1]

This case arises out of a fall that occurred on September 6, 2011 in the freezer aisle of Defendant's store.  As Plaintiff, Lillie Williams-Stewart, was shopping, she turned down the meat aisle and slipped and fell on water leaking from the bottom of several refrigeration units.  ECF No. 17 at 5.  Defendant knew about the leak prior to Plaintiff's fall and, accordingly, had placed multiple wet floor signs in the aisle in addition to "spill magic absorbent socks" and paper towels.  ECF No. 16 at 2; ECF No. 18 at 1.  However, Plaintiff did not see the signs or the water before she fell.  ECF No. 16 at 2; ECF No. 17, Ex. 1 at 10.  According to Plaintiff, the wet floor signs were not placed in an area sufficient to warn customers of the water on the floor.  ECF No. 17 at 5.  According to Plaintiff's son, Charles Williams, the store manager said that the refrigeration units had "been leaking for a long period of time" and that he "did not know that the water had [come] out that far from [the refrigeration units]."  ECF No. 17, Ex. 3 at 15-16.

Plaintiff filed suit against Defendant on August 29, 2013 in the Circuit Court for Prince George's County, requesting $100,000 for the injuries she sustained.  ECF No. 2 at 2.  The case

---

[1] At the summary judgment stage, all facts are taken in the light most favorable to Plaintiff as the nonmoving party.

was removed to this court on diversity grounds, ECF No. 7, and on December 23, 2013, was referred to me for all further proceedings. ECF No. 15.

2. **Standard of Review.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 343, 347 (1986). "For purposes of summary judgment, a fact is material if, when applied to the substantive law, it affects the outcome of the litigation." *Nero v. Baltimore Cnty., MD*, 512 F. Supp. 2d 407, 409 (D. Md. 2007) (citing *Anderson*, 477 U.S. at 248). "Summary judgment is also appropriate when a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F. Supp. 2d 606, 609 (D. Md. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." *Bertrand v. Children's Home*, 489 F. Supp. 2d 516, 518 (D. Md. 2007) (citing Fed. R. Civ. P. 56(e)). "The facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." *Id.* at 518-19 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587-88 (1986)). "The court, however, cannot rely upon unsupported speculation and it has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Id.* at 519 (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**3. Discussion.**

Maryland has adopted the rule in the Restatement (Second) of Torts § 343 (1965) for the general duty a landowner owes to invitees. *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 263 (2003). Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect them against the danger.

"An important corollary of these rules is that 'the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger.'" *Gellerman v. Shawan Rd. Hotel*, 5 F. Supp. 2d 351, 353 (D. Md. 1998) (quoting *Tennant v. Shoppers Food Warehouse*, 115 Md. App. 381, 389 (1997)). In the context of retail establishments, "[t]he customer is entitled to assume that the storekeeper will exercise reasonable care to ascertain the condition of the premises, and, if he discovers any unsafe condition, he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition." *Chamberlain v. Denny's, Inc.*, 166 F. Supp. 2d 1064, 1068 (D. Md. 2001) (citing *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117-18 (1955)). "The duties of a storekeeper thus include the obligation to warn customers of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Id.* (citing *Tennant* 115 Md. App. at 388).

Defendant contends that it satisfied its duty to warn of the water by placing wet floor signs in the aisle next to the leaking refrigeration units, and alternatively, that the condition was open and obvious. ECF 16 at 3-4. Defendant maintains that a reasonable person would have seen the wet floor signs and taken the proper precautions to avoid an accident. ECF No. 18 at 3.

Plaintiff concedes that there was at least one wet floor sign located near the refrigeration units, ECF No. 17 at 26, and indeed, pictures taken by Plaintiff's son immediately after the incident indicate that there were at least three signs near the refrigeration units. Although Defendant placed paper towels adjacent to the refrigeration units to mitigate the leaking, this failed to prevent water from leaking into the aisle. Plaintiff's answers to interrogatories and deposition testimony indicate that she fell on the water as she turned the corner to shop down the freezer aisle. ECF No. 17 at 15, 25. She also states that "there was at least a gallon of [water] on the floor where I fell." *Id.* at 26. Plaintiff did not notice any wet floor signs either before or after she fell. ECF No. 17 at 16.

In *Tennant*, the plaintiff slipped and fell on a pile of spinach leaves and an empty box that were left in the aisle of a grocery store. *Id*. at 384. The court noted that, on the one hand, store patrons should reasonably expect to find and guard against certain conditions like stray boxes, cartons, crates and bags, but, on the other hand,

> "[t]he storekeeper expects and intends that his customers shall look not at the floor but at the goods which he displays to attract their attention and which he hopes they will buy. He at least ought not to complain, if they look at the goods displayed instead of at the floor to discover possible pitfalls, obstructions, or other dangers, or if their purchases so encumber them as to prevent them from seeing dangers which might otherwise be apparent. Patrons are entitled therefore to rely to some extent at least upon the presumption that the proprietor will see that the passage ways provided for their use are unobstructed and reasonably safe."

*Id.* at 392 (quoting *Chalmers v. Great Atl. & Pac. Tea Co.*, 172 Md. 552, 559 (1937)). The court concluded that it was a question of material fact whether the plaintiff failed to exercise the

degree of care expected of a reasonably prudent person. *Id.* at 395. "'A reasonable inference is that an ordinarily prudent person, while shopping in a supermarket, with her attention drawn to the selection of merchandise displayed . . . could make an error of judgment, and trip over an object placed in an aisle near the displays of merchandise.'" *Id.* (quoting *Diffendal v. Kash & Karry Serv. Corp.*, 74 Md. App. 170, 176 (1988)). Defendant argues that *Tennant* is distinguishable because, here, the wet floor signs were near the water, which constituted "a reasonable means to warn Plaintiff of the potential hazard ahead." ECF No. 16 at 6. However, a jury must determine whether these signs were visible before Plaintiff turned down the aisle, sufficient to warn of the water on the floor, or whether Plaintiff's own conduct, by failing to see the signs or the water, fell below the degree of care expected of a reasonably prudent person.

Defendant's reliance on *Pfaff v. Yacht Basin Co., Inc.*, 58 Md. App. 348 (1984), is misplaced. There, the plaintiff fell out of a pickup truck parked on the upper tier of a two-tier parking lot. *Id.* at 351-52. The plaintiff knew that the lot was two-tiered and did not have guardrails before he climbed into the back of the truck and attempted to crawl out of the truck backwards. *Id.* The court found that plaintiff was contributorily negligent because he was aware of the danger and still chose to exit his vehicle from the rear, without looking in the direction he was moving, "in complete disregard of the condition he now argues was a dangerous one." *Id.* at 356. Defendant argues that Plaintiff's conduct in this case is "much more egregious" because "Plaintiff not only observed the warning sign, [but] also admits to observing the water on the floor." ECF No. 16 at 7. However, there is evidence to the contrary; Plaintiff testified that she did not see the warning signs or the water before she fell.

In *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351 (D. Md. 1998), also relied upon by Defendant, the plaintiff tripped over an expansion joint located in a small space

between a curb and a sidewalk. *Id.* at 353.  The court concluded that "as a matter of law, the condition of the curb/sidewalk joint on defendants' premises was open and obvious." *Id.* at 354.  The court relied on several cases holding that irregularities in sidewalks and pavement were common enough that they constitute open and obvious conditions for which a landowner has no duty to warn pedestrians.  However, water on a supermarket floor is neither equally common nor necessarily open and obvious.

Similarly, in *Finkelstein v. Vulcan Rail & Const. Co.*, 224 Md. 439 (1961), the plaintiff electrician tripped and fell over a bolt installed by the defendant subcontractor on a work site, and the court reasoned that the bolt constituted an open and obvious condition on the worksite. *Id.* at 440-41.  Defendant argues that the warning signs here were similarly open and obvious, but *Finkelstein* is distinguishable in two ways.  First, the court emphasized that the ordinary duty to maintain a safe work environment is "qualified . . . in situations where the place of work is a construction project, because of the common and necessary hazards there to be regularly encountered." *Id.*  No such lesser duty to maintain a safe environment applies to a grocery store. The *Finkelstein* court also noted that the electrician assumed the risk of the danger because he had worked on the job site for two weeks before the accident and had been "fully aware of the presence of the bolts, having discussed them with his co-workers." *Id.* at 441.  Here there is no evidence that Plaintiff had any reason to believe that there would be water on the floor in the meat aisle.

Summary judgment was also denied in *Payne v. Wal-Mart Stores, Inc.*, Case No. SAG 10-2241, 2011 WL 6738501 (D. Md. Dec. 21, 2011), where the court noted that "Maryland courts typically deny summary judgment motions in cases in which a store patron fell as a result of an obstacle known to or created by store employees." *Id.*  at *2 (citing *Tennant*, 115 Md. App.

381 at 394-95, *Diffendal*, 74 Md. App. 170 at 178 and *Chalmers,* 172 Md. 552 at 558; *see also Chamberlain*, 166 F. Supp. 2d at 1068-69.  The court concluded that "given Mrs. Payne's testimony that the manhole cover was unstable when she stepped on it, a jury could find that yellow paint and caution tape—if, indeed, the manhole cover was marked in that way—did not sufficiently warn patrons of the potential danger the manhole cover posed." *Id.*  Here, too, depending on the extent of the leak and the location of the caution signs, a jury could conclude that Defendant did not provide sufficient warning and that the condition was thus not open and obvious.

**4.   Conclusion.**

The Court will deny Defendant's motion for summary judgment due to genuine disputes of material facts.

Date:   September 5, 2014                                                              /S/
                                                                                    Jillyn K. Schulze
                                                                            United States Magistrate Judge